UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES HUDSON, GEORGE GARDNER,<br>TYRON SMITH, and JOHN HALL,<br>individually and on behalf of all other<br>similarly situated,<br>Plaintiffs,<br><br>v.<br><br>CITY OF CHICAGO et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 05 C 5449<br><br>Judge Ruben Castillo |

## MEMORANDUM OPINION AND ORDER

Plaintiffs James Hudson ("Hudson"), George Gardner ("Gardner"), Tyrone Smith

("Smith"), and John Hall ("Hall") (collectively "Plaintiffs") bring this lawsuit pursuant to 42

U.S.C. § 1983, both individually and on behalf of two proposed classes. They allege that the

City of Chicago ("City") and officers in the Chicago Police Department ("CPD") unlawfully

arrested and/or ticketed them pursuant to Section 10-40-550 of the Chicago Municipal Code

("the Bridge Ordinance")[1] for peacefully panhandling on the public sidewalks on or near a bridge

---

[1] Until July, 28, 2006, the Bridge Ordinance stated:

> No person shall form part of any assembly or crowd on any of the bridges of the
> city, or the approaches leading to the same, so as to obstruct in any manner the
> passage of pedestrians and vehicles across the same, or be and remain upon any of
> the sidewalks or main passages of any of the bridges longer than is necessary to
> pass over the same.

The Chicago City Council amended the Bridge Ordinance on July 28, 2006, excising the
"assembly or crowd" requirement. The Revised Bridge Ordinance states:

> No person shall engage in any conduct which obstructs or interferes with the free
> flow of pedestrians or vehicles across a bridge.

(R. 168, Pls.' Mem. in Support of Mot. for Class Cert. ("Pls.' Mem.") at 1.)

in violation of the First, Fourth, and Fourteenth Amendments to the United States Constitution. (R. 168, Pls.' Mem. at 1.) Plaintiffs further allege that certain individual defendants are liable as supervisors, and that the City is liable for failing to train the individual defendants. Currently before the Court is Plaintiffs' motion to certify two classes pursuant to Federal Rule of Civil Procedure Rule 23(b)(3), both defined as:

> All persons who were ticketed and/or arrested pursuant to the Bridge Ordinance for panhandling on public fora in Chicago.

(*Id.* at 2.) Plaintiffs seek to certify one class against the City, encompassing individuals who were arrested and/or ticketed[2] under the Bridge Ordinance between September 21, 2003 and July 28, 2006 ("Class One"). (*Id.* at 2.) Additionally, Plaintiffs seek to certify a second class against Captain James Knightly ("Knightly"), Officer Robert Jasinski ("Jasinski"), Officer John Dovgin ("Dovgin"), and Officer Charles Weyer ("Weyer") (collectively "Defendant Officers") to provide relief for individuals arrested and/or ticketed by Defendant Officers pursuant to the Bridge Ordinance from October 20, 2004 through July 28, 2006 ("Class Two"). (*Id.*) Plaintiffs claim that Defendant Officers have "unlawfully applied the Bridge Ordinance to falsely arrest and/or ticket Plaintiffs for the mere peaceful act of panhandling" and have "selectively enforced the Bridge Ordinance only against panhandlers." (*Id.* at 1.) Plaintiffs further claim that the City failed to train its officers on how to properly enforce the Bridge Ordinance, and was deliberately indifferent to the violation of Plaintiffs' constitutional rights. (R. 98, Third Am. Compl. ¶¶ 6-8.) For the reasons set forth below, Plaintiffs' motion for class certification (R. 161-1) is denied in

---

[2] The term "ticket" refers to the "Administrative Notice of Violation" or "ANOV," that the Defendant officers issued to the Plaintiffs for violating the Bridge Ordinance. (R. 170, Defs.' Mem. in Opposition to Mot. for Class Cert. ("Defs.' Mem.") at 1.)

2

its entirety.

## BACKGROUND

### I. The Arrests of the Named Plaintiffs

Plaintiffs claim that the City and Defendant Officers targeted only panhandlers in enforcing the Bridge Ordinance. (R. 168, Pls.' Mem. at 4.) Plaintiffs further allege that Defendants did not have probable cause to arrest members of the proposed class because "their arrest reports consist of vague, non-particularized, and non-individualized language" and that "in making these arrests, individual Defendant officers completely ignored the Bridge Ordinance's 'assembly or crowd' requirement, making these arrests facially unreasonable for failure to meet the basic elements of the offense." (*Id.*)

Plaintiffs Hudson, Gardner, and Smith were arrested on June 1, July 5, and July 21, 2005, respectively, for allegedly violating the Bridge Ordinance. (*Id.* at 3.) These Plaintiffs claim that their arrest reports omit mention of any facts or evidence that would support the arresting officers' probable cause determination. (*Id.*) Furthermore, these Plaintiffs allege that at the time of the arrests they were not interfering or obstructing the passage of pedestrians or vehicles on the bridge, nor were there any crowds gathered, which Plaintiffs claim is required by the Bridge Ordinance. (*Id.*)

Plaintiff Hall was arrested at least three times for violating the Bridge Ordinance: on February 9, 2004, April 30, 2004, and September 22, 2004. (*Id.*) He was also ticketed under the Bridge Ordinance on July 11, 2005. (*Id.* at 4.) Like the other named plaintiffs, Hall alleges that neither his arrest reports nor his ticket contains any individualized facts or evidence that would support the arresting officers' probable cause determinations, and these documents also fail to

3

reference the Bridge Ordinance's "assembly or crowd" requirement. (*Id.*) Furthermore, Hall claims that, at the time of his arrest, he was neither interfering with nor obstructing the passage of pedestrians or vehicles on the bridge, and no crowds were around him. (*Id.*)

## II.     The Thompson Litigation

Plaintiffs allege that Defendants' alleged misuse and misapplication of the Bridge Ordinance violates the settlement agreement reached in another case decided in this district, *Thompson v. City of Chicago*, No. 01 C 6916 (N.D. Ill. 2003) (Manning, J.). In *Thompson*, Plaintiffs brought a class action against the City of Chicago, alleging that the City's enforcement of Section 8-4-010(f) of the Chicago Municipal Code ("the Panhandling Ordinance") violated their rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution. (R. 168, Pls.' Mem., Ex. 3, Settlement Agreement ("Agreement") at 1.) Plaintiffs facially attacked the Panhandling Ordinance as unconstitutional, and claimed that they had been unlawfully arrested and/or ticketed by Chicago police officers for peacefully panhandling. (*Id.* at 2.) On March 27, 2002, the City rescinded the Panhandling Ordinance. (*Id.* at 1.) The parties settled on October 15, 2003, and on October 16, 2003, the Court certified two classes for purposes of settlement. (R. 168, Pls.' Mem., Ex. 2, Approval Order and Judgment ("Approval Order") at 2.) Pursuant to the Agreement and the Court's Approval Order, the City agreed to issue a directive to all police officers cautioning them not to use the Bridge Ordinance to interfere with the legal rights of the panhandlers. (*Id.*) ("[T]he City has agreed to issue a directive to its police officers that the Chicago police should not arrest and/or ticket individuals for panhandling pursuant to Sections 8-40-010(a) (disorderly conduct), 10-40-550 (obstruction of traffic on a bridge), 10-40-560 (congregation on bridges or viaducts) and 10-8-080 (charitable

4

solicitation without a license.") Plaintiffs claim that, despite this Agreement, the City initiated a practice of unlawfully using the Bridge Ordinance to arrest and ticket panhandlers on public sidewalks and near bridges. (*Id.*, Pls.' Mem. at 2.)

## LEGAL STANDARD

A plaintiff seeking class certification has the burden of proving that the proposed class meets the requirements of Rule 23 of the Federal Rules of Civil Procedure. *Jackson v. Nat'l Action Fin. Servs., Inc.,* 227 F.R.D. 284, 286 (N.D. Ill. 2005). A class may be certified if "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Failure to meet any of the requirements of Rule 23(a) precludes class certification. *Retired Chi. Police Ass'n v. City of Chi.,* 7 F.3d 584, 596 (7th Cir. 1993). Once these prerequisites are met, the potential class must also satisfy at least one provision of Rule 23(b). *Rosario v. Livaditis,* 963 F.2d 1013, 1017 (7th Cir. 1992). A plaintiff seeking monetary damages, as Plaintiffs are here, must demonstrate that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). A court has broad discretion to determine whether the proposed class has met the requirements of Rule 23. *Jackson,* 227 F.R.D. at 286.

## ANALYSIS

Plaintiffs argue that both proposed classes meet the requirements of Rule 23(a) and Rule

23(b)(3). Defendants contend, however, that with respect to Class One, individual issues predominate over common ones, which precludes certification under Rule 23(b)(3). (*Id.* at 9.) Defendants further argue that this Court should not certify Class Two because Plaintiffs have failed to meet Rule 23(a)(3)'s typicality requirement and Rule 23(b)(3)'s predominance requirement. (R. 170, Defs.' Mem. at 8-9.) We will consider both classes together under Rule 23(a), but analyze each class separately under Rule 23(b)(3).

## I.     Rule 23(a) Requirements

### A.     Rule 23(a)(1): Numerosity

Rule 23(a) requires that a proposed class be so numerous that joinder is impractical. "'Where the class is large, the numbers alone are dispositive of the impracticability of joinder,' and the Court need not consider other factors to determine whether the numerosity requirement is met." *Wallace v. Chi. Hous. Auth.*, 224 F.R.D. 420, 427 (N.D. Ill. 2004) (*citing Thillens, Inc. v. Cmty. Currency Exch. Ass'n*, 97 F.R.D. 668, 677 (N.D. Ill. 1983)). Generally, joinder is impracticable where a class contains more than 40 members. *Vodak v. City of Chi.*, 03 C 2463, 2006 WL 1037151, at *3 (N.D. Ill. Apr. 17, 2006); *Jackson*, 227 F.R.D. at 287. There were approximately 101 tickets/arrests pursuant to the Bridge Ordinance involving more than 40 individuals. (*See* R. 170, Defs.' Mem., Ex. B, Arrests/Tickets under the Bridge Ordinance; *see also* R. 168, Pls.' Mem. at 7 (stating that approximately 70 Panhandlers were ticketed and/or arrested under the Bridge Ordinance).) Defendants do not contest numerosity, and given the potential number of claimants, joinder is entirely impractical. Therefore, we find that both of the proposed classes meet the numerosity requirement.

### B.     Rule 23(a)(2): Commonality

Rule 23(a)(2) requires that there be at least one issue of law or fact common to all members of the proposed class. "A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Rosario,* 963 F.2d at 1018. Claims arising out of Defendants' standardized conduct towards members of the proposed class present a classic case for treatment as a class action. *Murray v. GMAC Mortg. Corp.,* 05 C 1229, 2007 WL 1100608, at *4 (N.D. Ill. Apr. 10, 2007) ("Commonality generally exists when the defendant has engaged in "standardized conduct" towards the members of the proposed class.") (citations omitted); *Dunn v. City of Chi.,* 231 F.R.D. 367, 373 (N.D. Ill. 2005) ("Commonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members.") (internal citations omitted).

Plaintiffs claim that Defendants engaged in a common course of conduct by: (1) selectively enforcing the Bridge Ordinance almost exclusively against panhandlers; (2) arresting and/or ticketing the panhandlers pursuant to the Bridge Ordinance without probable cause and without meeting all of the elements of the offense (the "assembly or crowd" requirement); and (3) "rubber-stamping" the faulty probable cause determinations in the arrest reports. (R. 168, Pl.'s Mem. at 10-12.) Plaintiffs further argue that there are common questions of law concerning whether Defendant Officers' conduct violated Plaintiffs' First, Fourth, and Fourteenth Amendment rights, and if the City can be held responsible for their actions due to its failure to train them. Plaintiffs, therefore, allege standardized conduct on the part of Defendant Officers that would raise the same legal questions as to each member of the putative class—whether Defendant Officers uniformly enforced the Bridge Ordinance against panhandlers only, despite the absence of probable cause and the fact that the panhandlers had not met the Bridge

7

Ordinance's "assembly or crowd" requirement. *Id.* at 15; *Dunn,* 231 F.R.D. at 373. Because the named Plaintiffs' claim arises from the same alleged practice or course of conduct that give rise to the claims of the putative class members, have the same essential characteristics as the claims of the class at large, and raise common questions of law, the Court concludes that plaintiffs have satisfied the commonality requirement of Rule 23(a).

## C.     Rule 23(a)(3): Typicality

Rule 23(a)(3) requires that the claims of the class representative be typical of the claims of the entire class. "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente v. Stokely-Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir. 1983). A proposed class that meets the commonality standard will generally meet the typicality requirement. *Dunn,* 231 F.R.D. at 372.

Plaintiffs claim that they meet the typicality requirement because by virtue of their panhandling activities, they "were subjected to the same systemic, widespread illegal practices of Defendants," and this course of conduct is the basis for the claims of all putative class members. (R. 168, Pls.' Mem. at 16.) Defendants claim that Plaintiffs have not met the typicality requirement because Plaintiffs cannot prove the liability of each Defendant Officer. (R. 170, Defs.' Mem. at 10.) Plaintiffs have named twenty-one officers as Defendants in this lawsuit, but the Complaint alleges arrests/tickets that implicate only twelve Officers. (*Id.*)

Several courts have held that although a plaintiff might be injured by a course of conduct that is common to all of the defendants, a plaintiff cannot bring a class action against defendants with whom he had no dealing. *Payton v. County of Kane,* 308 F.3d 673, 678 (7th Cir. 2002) ("to

8

bring a valid case, a plaintiff must allege that a defendant—the very defendant sued—has somehow wronged her in a legally cognizable way"). The issue is one of standing: "Article III requires that the plaintiff has suffered an 'injury in fact' which is fairly traceable to the challenged action of the defendant and 'likely,' as opposed to merely 'speculative,' to be 'redressed by a favorable decision.'" *Id.* at 673 (citations omitted). However, the Seventh Circuit has adopted an exception to standing known as the juridical link doctrine, which allows a class action to proceed where "the plaintiffs as a group—named and unnamed—have suffered an identical injury at the hands of several parties related by way of a conspiracy or concerted scheme, or otherwise 'juridically related in a manner that suggests a single resolution of the dispute would be expeditious.'" *Id.* at 679 (*citing La Mar v. H & B Novelty & Loan Co.*, 489 F.2d 461, 464-65 (9th Cir. 1973)).

We find that the juridical link doctrine is applicable to the current case. Defendants argue that the juridical link doctrine does not apply because "Plaintiffs do not, and indeed, cannot, allege a conspiracy between the Defendant Officers or identify a common statute or ordinance requiring uniform action." (R. 171, Defs.' Mem. at 5.) We disagree. Plaintiffs have alleged and produced some evidence that "through a common and deliberate scheme, the City and the Chicago Police Department unlawfully used and misapplied the Bridge Ordinance as a pretext to arrest and/or ticket members of the proposed Classes." (R. 168, Pls.' Mem. at 4.) This allegation of a conspiracy or concerted scheme by Defendants to use the Bride Ordinance to arrest panhandlers is sufficient to give Plaintiffs standing to challenge this practice.

Defendants also argue that the juridical link doctrine requires that their actions be traced back to a specific statute or ordinance mandating uniform action, but we reject this narrow

reading of the doctrine. While juridical links are commonly found where there is a common statute or ordinance mandating uniform action, *Payton*, 308 F.3d at 679, Defendants' actions need not be traced back to a specific statute or law mandating uniform action where, as here, Plaintiffs are alleging a common course of conduct on the part of Defendants, who, as members of the CPD, are legally linked. *See Weiss v. Winner's Circle*, 91 C 2780, 1995 WL 755328 (N.D. Ill. Dec. 14, 1995) (where defendant assigned plaintiffs' contracts to various lenders, juridical link doctrine applied because of the interconnectedness of defendant/lenders relationship, even though there was no case or controversy between some of the plaintiffs and some of the lenders);*see also Contract Buyers League v. F. & F. Investment*, 300 F. Supp. 210 (N.D. Ill. 1969) (applying the juridical link doctrine in certifying a class where the plaintiffs argued that the defendants' action in discriminating against plaintiffs in housing contracts "resulted from a concert and pattern of discriminatory activity including other similar contracts"). In the instant case, Defendant Officers made arrests, issued tickets, and/or approved the probable cause determinations under the Bridge Ordinance, factors that support Plaintiffs' allegation that they were involved in an concerted scheme. Defendants' common course of conduct, therefore, warrants application of the juridical link doctrine.

Defendants also argue that Plaintiffs fail to meet the typicality prong because the circumstances surrounding each of the Plaintiffs' arrests/tickets is so highly individualized that this Court would have to conduct an individualized inquiry of whether Defendants violated each Plaintiff's rights. (*Id.* at 12.) Factual differences, however, do not preclude class certification under Rule 23(a) because Plaintiffs' arrests/tickets arise from the same course of conduct and are based on the same legal theories as the claims of the putative class members. *Rosario*, 963 F.2d

at 1018 ("[W]e have not previously interpreted Rule 23(a)(3) to require all class members suffer the same injury as the named class representative. Instead, we look to the defendant's conduct and the plaintiffs' legal theory to satisfy Rule 23(a)(3)."); *De La Fuente*, 713 F.2d at 232 ("The typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members. Thus, similarity of legal theory may control even in the face of differences of fact."); *Vodak*, 2006 WL 1037151, at *5 (stating that under the typicality prong, "certain factual differences may be excused as long as the named representative's claims are based on the same course of conduct as the class as a whole and the same legal theory"). Accordingly, we find that Plaintiffs have satisfied the typicality prong of Rule 23(a).

### D. Rule 23(a)(4): Adequacy

To determine if the plaintiff has met the adequacy requirement of Rule 23(a)(4), the Court must determine whether the named Plaintiffs: (1) have "antagonistic or conflicting claims with other members of the class;" (2) have "a sufficient interest in the outcome of the case to ensure vigorous advocacy;" and (3) have counsel that is "competent, qualified, experienced and able to vigorously conduct the litigation." *Sebo v. Rubenstein*, 188 F.R.D. 310, 316 (N.D. Ill. 1999); *Tatz v. Nanophase Techs. Corp.*, 01 C 8440, 2003 WL 21372471, at *8 (N.D. Ill. June 13, 2003).

Defendants do not contest that the named Plaintiffs and their counsel are adequate, and we find that Plaintiffs have sufficiently proven that they are suitable class representatives represented by experienced counsel. Each named plaintiff has met with counsel to discuss the lawsuit, to provide factual evidence relevant to their claims, and to prepare for their depositions. (R. 168, Pls.' Mem. at 17.) Because Plaintiffs have been actively involved in this litigation, they

11

have demonstrated that they have a stake in the outcome sufficient to ensure effective advocacy. *Sebo*, 188 F.R.D. at 316 ("For a plaintiff who wishes to be a class representative, 'general knowledge [of the case] and a participation in discovery are enough.'") (internal citations omitted). Additionally, there is no evidence before us that any of the named Plaintiffs have claims that are antagonistic to or conflicting with the claims of other class members. Class counsel also meets the adequacy requirement; they are experienced class action lawyers who served as class counsel in the related *Thompson* litigation. Plaintiffs, therefore, satisfy the adequacy requirement of Rule 23(a)(4).

## II. Rule 23(b)(3) Requirements

In addition to the four requirements of Rule 23(a), a plaintiff seeking to certify a class action for monetary damages pursuant to Rule 23(b)(3) also must show that: (1) common questions of fact or law predominate over questions affecting individual class members; and (2) that a class action is superior to other methods of adjudication. Fed. R. Civ. P. 23(b)(3).

> In considering Rule 23(b)(3)'s requirements, the court must review the substantive elements of plaintiffs' cause of action, the proof necessary for the various elements and the manageability of the trial on these issues. The court is obligated to determine whether the existence of individual issues preclude certification, and must take into account the substantive law, facts, procedural due process, and fundamental fairness. Where liability determinations are both individual and fact-intensive, class certification under Rule 23(b)(3) is improper.

*Pastor v. State Farm Mut. Auto. Ins. Co.*, 05 C 1459, 2005 WL 2453900, at *5 (N.D. Ill. Sept. 30, 2005) (citations omitted). The predominance inquiry is far more demanding than Rule 23(a)'s commonality requirement. *Amchem Prods. v. Windsor*, 521 U.S. 591, 623-24 (1997). "If individual issues predominate, then class certification is usually not a superior method for resolving the controversy." *Murry v. America's Mortg. Banc, Inc.*, 03 C 5811, 03 C 6186, 2005

WL 1323364, at *3 (N.D. Ill. May 5, 2005) (*citing Szabo v. Bridgeport Machs., Inc.,* 249 F.3d 672, 675 (7th Cir. 2001)).

In this case, a finding of municipal liability against the City depends on whether the factfinder determines that Defendant Officers violated Plaintiffs' constitutional rights. *See Contreras v. City of Chi.,* 119 F.3d 1286, 1294 (7th Cir. 1997) (municipal liability derivative of subordinate liability). Therefore, if this Court finds that individual issues predominate over common issues with respect to Plaintiffs' claims against Defendant Officers and declines to certify Class Two, then the assessment of Defendant Officers' liability would have to be made individually as to each Plaintiff in order to determine if the City is liable, as a municipality, for the actions of Defendant Officers. This individualized assessment would necessarily defeat the predominance requirement of Rule 23(b)(3) and render Class One uncertifiable. Therefore, we will analyze each class separately starting with Class Two. For the following reasons, we find that Plaintiffs' proposed classes do not meet the predominance requirement of Rule 23(b)(3). Further, because Plaintiffs have failed to show predominance, we do not have to determine whether the proposed classes meet the superiority requirement of Rule 23(b)(3).

## A. Class Two

Plaintiffs claim that the overarching issue here is "whether the individual Defendants' conduct was unconstitutional," and "whether the uniform policy of unlawfully targeting and arresting panhandlers constitutes an unconstitutional municipal policy." (R. 168, Pls. Mem. at 17.) Plaintiffs argue that these issues will predominate over any individual issues or factual discrepancies. A careful analysis of the claims, defenses and evidence presented in this case, however, shows that common questions of law and fact predominate over individual issues.

13

### 1. Fourth Amendment Claim

Plaintiffs claim that they were arrested by Defendant Officers without probable cause in violation of their Fourth Amendment rights. "A police officer has probable cause to arrest when 'the facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Hodgkins v. Peterson*, 355 F.3d 1048, 1060-1061 (7th Cir. 2004) (internal citations omitted). To determine whether the arrests/ticketing of the putative class members violated their Fourth Amendment rights, this Court will have to assess whether "the historical facts, viewed from the standpoint of an objectively reasonable police officer amount to . . . probable cause." *Anderer v. Jones*, 412 F.3d 794, 798 (7th Cir. 2005).

Plaintiffs argue that this Court will not have to look at the individual circumstances surrounding each arrest because the main issue in this case is not whether the probable cause inquiry was conducted correctly, but whether Defendants have a uniform policy of targeting panhandlers and arresting/ticketing them without probable cause. Plaintiffs further contend that Defendants cannot prove that they engaged in any individualized probable cause inquiry that would require this Court to look at the circumstances of each arrest, and even if they could make such a showing, Defendant Officers' erroneous belief as to what constitutes a violation of the Bridge Ordinance would render any finding of probable cause invalid. We evaluate each of these claims below.

### a. No Individualized Inquiry Necessary because of Defendants' Uniform Policy

14

Plaintiffs claim that Defendants had a policy of arresting panhandlers under the Bridge Ordinance without probable cause. Some courts have found that "[w]hen a class challenges a uniform policy or practice, the validity of that policy or practice tends to be the predominant issue in the ensuing litigation." *Young v. County of Cook*, 06 C 5522007 WL 1238920, at \*7 (N.D. Ill. Apr. 25, 2007); *Calvin v. Sheriff of Will County*, 03 C 3086, 2004 WL 1125922, at \*4 (N.D. Ill. May 17, 2004). Both *Young* and *Calvin* focus on the constitutionality of uniform strip search policies adopted by the Sheriffs of Cook and Will counties, respectively. The strip searches were conducted without any reasonable suspicion or probable cause inquiries. In *Young* and *Calvin*, the courts found that "the ultimate legal question is not whether jail personnel made erroneous reasonable suspicion determinations regarding each individual, but whether the Sheriff's policy avoided all such inquiry, thus depriving those individuals of their Fourth and Fourteenth Amendment rights." *Young*, 2007 WL 1238920, at \*7 (citing *Calvin*, 2004 WL 1129522, at \*4). Similarly, Plaintiffs in the instant case claim that the existence of a widespread, systematic practice of singling out panhandlers for arrest and/or ticketing in the absence of probable cause is the central common issue, and it is not dependent on facts specific to any class member's arrest.

However, unlike defendants in *Young* and *Calvin*, Defendants here contest Plaintiffs' claim that there was no probable cause for the arrests. The strip searches in *Young* and *Calvin* did not require the officers to engage in the probable cause inquiry because all of the individuals admitted to the Cook and Will County jails were stripped searched without exception. In contrast, this case does not involve the application of a practice or a policy that, by definition, lacks a probable cause component. Furthermore, in the event that we find that probable cause

15

exists in the ticketing/arrest of a particular Plaintiff, this would be a complete defense to liability in that instance. *Mustafa v. City of Chi.*, 442 F.3d 544, 547 (7th Cir. 2006) ("Probable cause to arrest is an absolute defense to any claim under Section 1983 against police officers for wrongful arrest, false imprisonment, or malicious prosecution.")

For these reasons, Plaintiffs' reliance on *Wilson v. Tinicum Township*, 92-6617, 1993 WL 280205 (E.D. Pa. July 20, 1993), also is misplaced. In *Tinicum Township*, Defendants stopped and detained drivers allegedly based on their race, and Plaintiffs facially attacked the practice, claiming that it was presumptively invalid. In contrast, Plaintiffs in the instant case are attacking the Bridge Ordinance *as applied*, which would necessarily entail an analysis of how the Bridge Ordinance was applied to each individual class member.[3] *See generally Hopson v. Schilling*, 418 F. Supp. 1223, 1239 (D. Ind. 1976) (refusing to certify a class attacking the constitutionality of a statute as applied because court would have to look at the actual practices of the defendants); *Baird v. California Faculty Ass'n*, No. Civ. S-00-0999, 2000 U.S. Dist. LEXIS 13594 (E.D. Cal. July 13, 2000) (certifying a class only to the extent that it asserted a facial, as opposed to an as applied, challenge to the statute). Unlike stopping and detaining drivers based on race, the act of arresting the Plaintiffs for violating the Bridge Ordinance is not presumptively invalid unless there is no probable cause, the presence of which would have to be determined for each Plaintiff. *See Tinicum Township*, at \*8 ("where plaintiffs have alleged that the police have engaged in a presumptively invalid procedure . . . a 23(b)(3) class is appropriate since the liability which the

---

[3] In fact, this factor is what distinguishes the instant case from the *Thompson* litigation. In *Thompson*, the plaintiffs were facially attacking the Panhandling Ordinance, and the validity of the ordinance predominated over any individual issues. (R. 168, Pls.' Mem., Ex. 3, the Agreement at 2.) In this case, Plaintiffs claim that the Bridge Ordinance is unconstitutional as applied to them. (R. 98, Third Am. Compl. ¶ 5.)

16

plaintiffs seek to establish is based on the operation itself rather than on the circumstances surrounding each individual stop or arrest"). For example, one Plaintiff claims that he panhandles on the bridge regularly, (R. 170, Defs.' Mem., Ex. C, Hall Dep. at 11); two other Plaintiffs claim that they panhandle on the street and never on the bridge, (*Id.*, Ex. D, Hudson Dep. at 22; *Id.*, Ex. E, Gardner Dep. at 24); and one Plaintiff even pled guilty to violating the Bridge Ordinance, (*Id.*, Ex. F, Smith Dep. at 115-117). It is clear that the factual circumstances surrounding each arrest varies, and an individualized inquiry would have to be conducted in order to determine if Plaintiffs were unlawfully targeted or were violating the Bridge Ordinance.

### b. No Individualized Inquiry Necessary Because of Non-Personalized Probable Cause Determinations

Plaintiffs further argue that no individual probable cause inquiry is necessary because Defendant Officers' arrest reports consist of vague, non-particularized, and non-individualized language, (R. 168, Pls. Mem. at 7); none of the police officers who made the arrests, signed the complaints, or wrote the tickets can recall any individualized facts about any of the arrests or tickets, (R. 179, Pls.' Am. Reply to Defs.' Opp. to Class Cert. ("Pls.' Reply") at 3); and that in making these arrests, the arresting officers completely ignored the Bridge Ordinance's "assembly and crowd" requirement, making these arrests facially unreasonable for failure to meet the basic elements of the offense, (R. 168, Pls. Mem. at 7). The arrest reports submitted to the Court by Plaintiffs contain identical language in describing the alleged violation: "He/She did Obstruct Pedestrian/Vehicular traffic on a bridge while being on and remaining upon the bridge, sidewalk or main passageway longer than necessary to pass over the same." The arresting officer then circled "He" or "She" depending on the sex of the offender and filled in the offender's personal

information. (*Id.*, Ex. 8, Hudson/Gardner Arrest Reports.) Despite the uniformity of the arrest reports, this Court will not assume that the generalized language in the police reports is an indication that no probable cause determination was made as to the offender, or alternatively, that probable cause was lacking for the arrest.[4] *See Spiegal v. Cortese*, 196 F.3d 717, 724-25 (7th Cir. 2000) ("the law does not require that a police officer conduct an incredibly detailed investigation at the probable cause stage") (internal citations omitted). Furthermore, it is not clear to this Court if CPD policy required more detail in its arrest reports than provided by Defendant Officers,[5] or that even if CPD policy did require more detail, whether Defendant Officers' failure to follow CPD procedure sheds any light on the ultimate issue of whether they violated Plaintiffs' Fourth Amendment rights. *See generally Thompson v. City of Chicago*, 472

[4] Contrary to Plaintiffs' assertion that all of the arrest reports contain the same generalized language, other arrest reports contain different statements. For example, the arrest report for Plaintiff Hudson states that he was observed "standing on the bridge longer than necessary engaging pedestrians in conversation preventing them from crossing over, subject was attempting [sic] to solicit funds from pedestrians." (R. 170, Defs.' Mem., Ex. H, Sample Arrest Reports.) Unlike some of the other arrest reports, Hudson's arrest report discloses what type of obstruction he was causing that violated the Bridge Ordinance as well as the fact that he likely was panhandling. Other arrest reports do not include this much detail or contain different language, which would require this Court to delve more deeply into the facts surrounding the arrests to determine what actually happened.

[5] The General Policy directive is vague about what information the arresting officer has to include in the arrest reports. It states that: "Arresting Officers will be responsible for setting forth in the Arrest Report narrative sufficient information (elements of the offense and probable cause to arrest) to substantiate all charges placed against an arrestee." (R. 161, Pls.' Mem., Ex. 21, General Order 02-03, at 4.) To violate the Bridge Ordinance, an individual has to "form part of any assembly or crowd on any of the bridges of the city . . . so as to obstruct in any manner the passage of pedestrians and vehicles across the same, or be and remain upon any of the sidewalks or main passages of any of the bridges longer than is necessary to pass over the same." Many of the arrests reports include this very language in charging the individual with violating the Bridge Ordinance, but does not go into any further detail. Based on the General Policy directive, however, it is not clear that further detail was required in the arrest reports. (*See id.*, Ex. 8, Hudson and Gardner Arrest Reports.)

18

F.3d 444, 454 (7th Cir. 2006) (finding that the CPD's policy pertaining to the use of force "would not have been of any consequence whatsoever [in determining a violation of Section 1983] and would have failed to advance the inquiry into whether [Defendant] violated [Plaintiff's] Fourth Amendment rights by using excessive force in apprehending him").

In arguing that the arresting officers failed to conduct probable cause determinations, Plaintiffs also point to the fact that some of the police officers deposed were unable to elaborate on facts surrounding specific arrests. (R. 168, Pls.' Mem., Ex. 12, Dovgin Dep. at 232; R. 179, Pls.' Reply, Ex. 32, Weyer Dep. at 58-60; *Id.*, Stephens Dep. at 53.) The Dvogin, Stephens, and Weyer depositions are the only depositions that this Court could find where a Defendant Officer specifically states that he cannot remember the facts surrounding a specific arrest; however, Plaintiffs have named twenty-one officers as parties to this lawsuit and have not shown that the remaining eighteen officers also cannot recall facts specific to any of the arrests.[6] (*See, e.g.,* R. 179, Pls.' Reply, Ex. 30, Carroll Dep. at 28 (stating that she can recall the specific facts surrounding two tickets that she issued).) Moreover, these facts may come out during discovery, and we will not attribute the memory lapses of three officers to the remaining eighteen individual Defendants.

Plaintiffs rely very heavily on *Vodak*, 2006 WL 1037151, where the court certified a class of plaintiffs alleging that the police unlawfully arrested them without probable cause. This case, however, involved a mass arrest, where the probable cause determination for each plaintiff would be the same because the plaintiffs were arrested at the same time and under the same

---

[6] Outside of Officer Carroll, it is difficult for this Court to determine if there are other officers who recall details surrounding specific arrests, as both parties only included partial depositions with their filings.

circumstances. *See id.* (noting that courts in this district routinely grant class certification in cases involving the mass arrest or mass detention of individuals because all of the claims arise from a single event); *see also Williams v. Brown*, 214 F.R.D. 484, 486 (N.D. Ill. 2003) (class certification appropriate for situations involving one time mass arrests). In contrast, in the instant case where Plaintiffs were arrested individually, this Court will have to look at the totality of the circumstances surrounding each arrest in order to determine the existence of probable cause.

### c. No Individualized Inquiry Necessary Because Defendants Erroneously Applied the Bridge Ordinance

Finally, Plaintiffs argue that Defendant Officers had no probable cause or made no probable cause inquiry for any of the arrests because they ignored the Bridge Ordinance's "assembly or crowd" requirement and arrested Plaintiffs even though they did not satisfy each element of the offense. An arrest is lawful "once probable cause is established as to each element of the offense," *Spiegal*, 196 F.3d at 725. However, the parties differ as to what actions violate the Bridge Ordinance, and we must interpret the Bridge Ordinance in order to determine what constitutes the elements of the offense. Defendants claim that the "assembly or crowd" requirement only applies to "obstruct[ing] in any manner the passage of pedestrians and vehicles across the [bridge]" and not the section "remains upon any of the sidewalks or main passages of any of the bridges longer than necessary to pass over the [bridge]." In other words, the ordinance prohibits two things—a group obstructing traffic on a bridge or an individual obstructing traffic by remaining on the bridge longer than necessary. Plaintiffs argue, however, that the "assembly or crowd" requirement applies to the ordinance in its entirety.

In interpreting the Bridge Ordinance,[7] we apply common principles of statutory

interpretation outlined by the Seventh Circuit:

> When we interpret a statute, we look first to its language. If that language is plain,
> our only function is 'to enforce it according to its terms.' The plain meaning of a
> statute is conclusive unless 'literal application of a statute will produce a result
> demonstrably at odds with the intentions of its drafters.' Therefore, our
> interpretation is guided not just by a single sentence or sentence fragment, but by
> the language of the whole law, and its object and policy. Further, we may adopt a
> restricted rather than a literal meaning of a word where acceptance of the literal

---

[7] The relevant issue at the class certification stage is whether Plaintiffs can satisfy the
requirements of Rule 23, not whether Plaintiffs are likely to prevail on the merits. *Eisen v.
Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974) ("nothing in either the language or history of
Rule 23 ... gives a court any authority to conduct a preliminary inquiry into the merits of a suit in
order to determine whether it may be maintained as a class action"). More recently, however,
courts have recognized that resolving the issue of class certification often requires reaching the
merits of the case, if only to identify common issues of fact and law and to determine whether the
common issues are likely to predominate over individual issues. *See Eggleston v. Chi.
Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 895 (7th Cir. 1981) ("*Eisen* has not
been interpreted so broadly, however, as to foreclose inquiry into whether plaintiff is asserting a
claim which, assuming its merit, will satisfy the requirements of Rule 23 as distinguished from
an inquiry into the merits of plaintiff's particular individual claim. Some overlap may be
unavoidable.") (internal citations omitted); *Foreman v. PRA III, LLC*, 05 C 3372, 2007 WL
704478, at *4 (N.D. Ill. Mar. 5, 2007) ("If evidence relevant to class certification is 'intertwined
with the merits,' however, the court's decision 'may involve some consideration of the factual
and legal issues' underlying the claim."). As the Seventh Circuit stated in *Szabo*:

> A court may not say something like "let's resolve the merits first and worry about
> the class later" . . . or "I'm not going to certify a class unless I think that the
> plaintiffs will prevail." But nothing in the 1966 amendments to Rule 23, or the
> opinion in *Eisen*, prevents the district court from looking beneath the surface of a
> complaint to conduct the inquiries identified in that rule and exercise the
> discretion it confers. Plaintiffs cannot tie the judge's hands by making allegations
> relevant to both the merits and class certification.

249 F.3d at 677. Therefore, although the proper interpretation of the Bridge Ordinance is a
question of law usually not suitable for resolution at the class certification stage, we conditionally
resolve this issue in order to determine whether Defendant Officers ignored the "assembly or
crowd requirement" for all tickets/arrests and therefore had no probable cause for the arrests.
*See, e.g., Benedict v. Altria Group, Inc.*, 05-2306-CM, 2007 WL 960049, at *8 (D. Kan. Mar. 30,
2007) (interpreting a statute in order to determine if class certification is appropriate).

meaning would lead to absurd results.

*Greenfield Mills, Inc. v. Macklin*, 361 F.3d 934, 954 (7th Cir. 2004) (internal citations omitted).
Based on the plain language of the Bridge Ordinance, the City Council intended to make it
unlawful for individuals to "form part of any assembly or crowd on any of the bridges of the city
. . . so as to obstruct . . . the passage of pedestrians and vehicles" or "be and remain upon any of
the sidewalks or main passages of any of the bridges longer than is necessary to pass over the
same." To read the Bridge Ordinance as Plaintiffs suggest would basically undermine the
purpose of the ordinance—to encourage the free flow of traffic on bridges—by ignoring that a
single individual can cause an impediment to traffic. Furthermore, if we read the assembly or
crowd requirement as applying to the second phrase—"be and remain upon any of the sidewalks
or main passages of any of the bridges longer than is necessary to pass over the same"—then this
entire phrase becomes duplicative and unnecessary. If Plaintiffs' interpretation is adopted, the
ordinance essentially would read: No person may form part of an assembly or crowd to block
traffic on the bridges and no person may form part of an assembly or crowd and remain upon the
bridges longer than necessary (or essentially, block traffic). We decline to give the Bridge
Ordinance such a tortured reading.

Consequently, because we find that the Bridge Ordinance does not require that an
individual form part of an assembly or a crowd in order to commit a violation, we disagree with
Plaintiffs that Defendant Officers ignored an essential element of the offense and arrested them
without probable cause. Therefore, because we have to determine whether there was sufficient

probable cause for each Plaintiff's arrest,[8] we deny class certification on Plaintiffs' Fourth Amendment claim.

## 2. Supervisor Liability

Plaintiffs also allege that the Defendant Officers who are watch commanders should be held liable for "failing to detect or prevent the misconduct of arresting officers," and for "acting with deliberate indifference toward the constitutional rights of panhandlers arrested under the Bridge Ordinance." (R. 1, Compl. ¶¶ 35-37, 58.) "To be held liable for conduct of their subordinates, supervisors must have been personally involved in that conduct." *Jones v. Chi.*, 856 F.2d 985, 992 (7th Cir. 1988).

Because this Court would have to make an individualized inquiry into whether Defendant Officers had probable cause to arrest Plaintiffs, we would also have to make a similar finding as to whether the watch commanders signed off on the conduct of the arresting officers despite the absence of probable cause. *See generally Murphy v. Chi. Transit Auth.*, 638 F. Supp. 464, 469 (N.D. Ill. 1986) (finding that supervisor liability is derivative of subordinate liability and there is no supervisor liability where the subordinate's actions did not violate plaintiff's constitutional rights). Indeed, supervisor liability is a highly fact intensive inquiry, requiring the "knowing

---

[8] Individualized determinations would also have to be made as to Defendant Officers' claims of qualified immunity, which would require this Court to look at, among other factors, whether "the facts, when viewed in the light most favorable to the plaintiff, indicate that the officer's conduct violated some constitutional right of the plaintiff." *Jones v. Wilhelm*, 425 F.3d 455, 460 (7th Cir. 2005). As mentioned above, the facts vary among the arrests and certain facts are in dispute, and these distinctions would necessarily prevent the immunity issue from being disposed of on a class-wide basis. *See generally Markham v. White*, 172 F.3d 486, 493 (7th Cir. 1999).

23

involvement" of each supervisor and not just mere negligence. *Jones,* 856 F.2d at 992

("[S]upervisors who are merely negligent in failing to detect and prevent subordinates'

misconduct are not liable . . . Gross negligence is not enough either. The supervisors must know

about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they

might see."). Therefore, Plaintiffs cannot prove that the watch commanders knew that the

arresting officers arrested/ticketed each Plaintiff without probable cause—and subsequently

approved the arrest reports despite having this knowledge—without establishing facts specific to

each arrest. Accordingly, Plaintiffs' supervisor liability claim fails to meet the predominance

requirement of Rule 23(b)(3).

### 3. First and Fourteenth Amendment Claims

Plaintiffs claim that Defendant Officers selectively enforced the Bridge Ordinance against

panhandlers in violation of their Fourteenth Amendment Equal Protection rights and their First

Amendment right to panhandle. Plaintiffs further argue that liability rests on the unlawful

singling out of panhandlers for arrests and/or ticketing, not the individual circumstances

surrounding each stop or arrest. (*See* R. 168, Pls.' Mem.at 17.) To prevail on a selective

enforcement claim, a plaintiff must prove that he was singled out for prosecution, and "the

discriminatory selection of him was based upon an impermissible consideration such as race,

religion, or the desire to prevent his exercise of constitutional rights." *United States Labor Party

v. Oremus,* 619 F.2d 683, 691 (7th Cir. 1980). The Seventh Circuit has not definitively resolved

the extent to which panhandling is protected by the First Amendment, but has recognized that

"some panhandler speech would be protected by the First Amendment." *Gresham v. Peterson,*

225 F.3d 899, 904 (7th Cir. 2000). Plaintiffs, therefore, would have to show that they were

24

exercising their First Amendment right to panhandle and were arrested or ticketed under the Bridge Ordinance, while other similarly situated, non-panhandlers were not arrested or ticketed. *Robertson v. City of Plano*, 97 C 5718, 1999 WL 412468 (N.D. Ill. June 8, 1999).

Similar to their Fourth Amendment claim, Plaintiffs have not shown that common issues predominate over individual issues thus rendering class certification appropriate for their selective enforcement claim. First, in order to determine if the City was in fact selectively targeting panhandlers, this Court would have to look at each individual arrest in order to see if each Plaintiff was actually panhandling at the time of the arrest. Plaintiffs' arrest reports differ in the reasons listed for violating the Bridge Ordinance. Some of the arrest reports/tickets state that the individual was "soliciting funds" at the time of his arrest, others say that the individual was obstructing traffic, and others are silent in this regard. (R. 170, Defs.' Mem., Ex. J, Sample Arrests/Tickets.) Plaintiffs assert, but do not provide any evidence, that all of the individuals arrested are panhandlers. While some of the named Plaintiffs admitted in their depositions that they were panhandling at the time of their arrest, (*see* R. 170, Defs.' Mem., Ex. C, Hall Dep. at 10, 63), this determination would have to be made as to each putative class member to see if Defendant Officers were, in fact, selectively targeting panhandlers. Accordingly, Plaintiffs'

motion to certify Class Two is denied.[9]

## B.    Class One

Plaintiffs claim that the City had an unconstitutional municipal policy of unlawfully

targeting and arresting panhandlers, and that it displayed deliberate indifference to Defendant

Officers' misuse of the Bridge Ordinance.    Plaintiffs further argue that the City failed to train its

officers on what constitutes a violation of the Bridge Ordinance, and its watch commanders on

how to properly approve arresting officers' probable cause determinations. (R. 178, Pls.' Reply

at 10-11.) The "failure to train" and "deliberate indifference" theories are derived from

municipal liability cases such as *Monell v. New York City Dep't. of Soc. Servs.*, 436 U.S. 658

(1978), *Canton v. Harris*, 489 U.S. 378 (1989), and *Bd. of County Comm'rs of Bryan County,*

*Okla. v. Brown*, 520 U.S. 397 (1997).  The Seventh Circuit has determined that *Monell* and its

progeny "presume that a constitutional violation has occurred (typically by a municipal

employee) and then ask whether the municipality itself may be liable for the violations."

*Contreras*, 119 F.3d at 1294 (" Indeed, the Supreme Court has 'emphasized the separate

character of the inquiry into the question of municipal responsibility and the question whether a

constitutional violation occurred.'").

---

[9] Defendants also argue that individual proof of damages would preclude certification of
the class under Rule 23(b)(3). Because we have decided that individual issues predominate over
common issues with respect to Plaintiffs' First, Fourth, and Fourteenth Amendment claims, we
need not resolve this issue. However, many courts have found that individualized determinations
regarding damages does not preclude certification under Rule 23(b)(3). *See, e.g., Dunn*, 231
F.R.D. at 378; *Williams v. Rizza Chevrolet-Geo, Inc.*, 99 C 2294, 2000 WL 263731, at *3
(N.D.Ill. Mar. 6, 2000) ("The possibility of individualized damage inquires does not defeat class
certification even if individual hearings ultimately may be required."); *see also Portis*, 2002 WL
22078279, at *4 (certifying a class and noting that damage sub-classes could be created if the
plaintiffs succeed in establishing the class's right to damages).

26

Therefore, the City's liability for deliberate indifference and for failing to train its officers is secondary to the basic issue of whether Defendant Officers violated Plaintiffs' constitutional rights. As we determined above, whether Defendant Officers' violated Plaintiffs' First, Fourth, and Fourteenth Amendment rights requires an individualized inquiry into the circumstances surrounding each Plaintiff's arrest. Therefore, class certification is inappropriate for Plaintiffs' *Monell* claims because Plaintiffs have failed to establish that common facts predominate over individual issues as to its claims against Defendant Officers. Accordingly, Plaintiffs' Motion to Certify Class One is denied.

## CONCLUSION

For the reasons set forth above, Plaintiffs' motion for class certification is denied in its entirety (R. 161-1).

ENTERED: _____

**Judge Ruben Castillo**
**United States District Court**

**Dated:** May 22, 2007